Lister *v.* Lister.

EDWIN A. LISTER

*v.*

HANNAH A. LISTER.

| | |
|---|---|
| 35 | 49 |
| 56 | 382 |
| 35 | 49 |
| 62 | 763 |

1. Where lands are bought and paid for by a husband, but the title thereto put in the name of his wife, the ordinary presumption of a settlement, which in this case was fully corroborated by his actions and declarations at the time of the purchase and transfer, cannot be rebutted by his subsequent declarations, nor by his present declarations of his intention then.

2. Nor will equity aid him on account of the subsequent adultery of the wife, and his consequent divorce from her therefor.

3. Nor will any possibility of curtesy in the property entitle him to relief.

4

Lister *v.* Lister.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. W. H. Francis,* for complainant.

*Mr. W. B. Guild, Jr.,* for defendant.

THE CHANCELLOR.

The parties to this suit were married on the 1st of June, 1858, in the state of New York. They lived together in Tarrytown, in that state, until the 1st of April, 1862, when they removed to the city of Newark, in this state, where they have lived ever since, with the exception of from six to nine months, in 1868, when they resided in Brooklyn, in New York. There were two children of the marriage, a son and daughter, the former now about twenty-two years of age, and the latter about nineteen. By the decree of this court, the husband and wife were, in November, 1879, divorced from the bond of matrimony, for the adultery of the latter. Since that time she has married the person with whom the adultery was proved to have been committed. In March, 1870, the complainant bought a lot of land in Nichols

NOTE.—The rule that where the evidence as to a husband's object in making a conveyance of lands to his wife is conflicting, the ordinary presumption that it was intended as a settlement prevails, has been recognized in New Jersey, *Linker* v. *Linker, 5 Stew. Eq. 174;* also *Stevens* v. *Stevens, 70 Me. 92; Lux* v. *Hoff, 47 Ill. 425; Cotton* v. *Wood, 25 Iowa 43; Darrier* v. *Darrier, 58 Mo. 222; Irvine* v. *Greerer, 32 Gratt. 411.*

Only contemporaneous acts and declarations are admissible to show the intent of a husband in making a settlement on his wife, and subsequent acts or declarations must be excluded, *Gillespie* v. *Burleson, 28 Ala. 551; Garner* v. *Graves, 54 Ind. 188; Crain* v. *Wright, 46 Ill. 107; Cairns* v. *Colburn, 104 Mass. 274; Cormerais* v. *Wesselhoeft, 114 Mass. 550; Mack* v. *Mack, 3 Hun 324; Kelly* v. *Campbell, 2 Abb. App. Dec. 492; Ferris* v. *Parker, 13 Tex. 385.* See *Gackenback* v. *Brouse, 4 W. & S. 546; Johnston* v. *Johnston, 31 Pa. St. 450; Gicker* v. *Martin, 50 Pa. St. 138; Moyer's Appeal, 77 Pa. St. 482; McCampbell* v. *McCampbell, 2 Lea 661, 665; Ingersole* v. *Truebody, 40 Cal. 603.*

Nor can a husband be asked, on an examination in open court, what his motives or intentions were when he made the settlement, *Woods* v. *Whitney, 42 Cal. 358; Gillespie* v. *Walker, 56 Barb. 185.* See *Wormley* v. *Wormley, 98 Ill. 544, 553.*

street, in Newark, from John Williams, for $1,100, which he paid, and took the title for the property in his own name. On the 28th of May, in the same year, he bought an adjoining lot of the same person, for $5,000, which he paid, and by his direction, the deed therefor was made to his wife, and at the same time he transferred the title of the other lot to her. In 1873 he bought three lots on Warwick street, in the same city, of his brother Alfred, for which he paid $3,700. These lots were, by his direction, conveyed by his brother to John Williams, in order that the latter might convey them to the defendant, which he did accordingly. On the first-mentioned lot, in Nichols street, the complainant erected a brick dwelling-house of three stories, and he repaired and otherwise improved the frame dwelling-house which was on the other Nichols street lot. He also built a stable on the Warwick street lot. Subsequently, the Nichol street properties were exchanged for a large lot of land on South Broad street, in the same city, and another lot of land on Thomas street, in the rear of the South Broad street property, was subsequently purchased, and the title to those properties was taken in the name of the defendant. On the South Broad street property,

The same rule applies to an advancement made by a parent to a child, *Betts* v. *Francis, 1 Vr. 152, 156, 159; Christy* v. *Courtenay, 13 Beav. 96; Williams* v. *Williams, 32 Beav. 370; O'Brien* v. *Sheil, L. R. (7 Irish Eq.) 255* [which criticises *Devoy* v. *Devoy, 3 Sm & Giff. 403*]; *Cartwright* v. *Wise, 14 Ill. 417; Sanderlin* v. *Sanderlin, 24 Ga. 583; Sharp* v. *Maxwell, 30 Miss. 589; Bradsher* v. *Cannady, 76 N. C. 445; High* v. *Stainback, 1 Stew. (Ala.) 24; McKane* v. *Bonner, 1 Bail. 113.*

Subsequent misconduct of the wife does not affect or invalidate a settlement, even where a divorce may have been obtained by the husband therefor, *Bent* v. *Bent, 44 Vt. 555; Edgerly* v. *Edgerly, 112 Mass. 175; Orr* v. *Orr, 8 Bush 156; Baggs* v. *Baggs, 54 Ga. 95; Johnson* v. *Johnson, Walk. Ch. 309; Porter* v. *Porter, 27 Gratt. 599; Charlesworth* v. *Holt, L. R. (9 Exch.) 38.* See *Marrall* v. *Marrall, L. R. (6 P. D.) 98; Weathersby* v. *Weathersby, 39 Miss. 652; Huntly* v. *Huntly, 6 Ired. Eq. 514; Vreeland* v. *Ryno, 11 C. E. Gr. 160, 12 C. E. Gr. 522.* As to antecedent misconduct, see *Grove* v. *Jeager, 60 Ill. 249; Chew* v. *Chew, 38 Iowa 405; Switzer* v. *Switzer, 26 Gratt. 574.*

Equity will not relieve where the settlement or conveyance was made in the expectation that the wife would die before her husband, when in fact she survived him, *Spring* v. *Hight, 22 Me. 408; Andrews* v. *Oxley, 38 Iowa 580.* See *Cotton* v. *Wood, 25 Iowa 43; Bettle* v. *Wilson, 14 Ohio 257.*—REP.

four costly dwelling-houses were erected, after the exchange.
The complainant alleges, and the proof establishes the claim,
that he paid, with his own money, the whole of the purchase-
money of the lots exchanged for the South Broad street prop-
erty, and of the Warwick street lot, and the cost of the im-
provements thereon, also the difference between the valuations of
the properties exchanged ; also what was paid for the Thomas
street property, and all the cost of the dwelling-houses erected
on the South Broad street land, and the interest on the mortgages
on the properties, and all taxes, insurance, water-rents and re-
pairs.   He states the amount so paid for the properties and im-
provements, not including taxes &c., at about $60,000.   In
addition, he is liable on a bond for $16,000, given by him and
his wife, and secured by a mortgage on the South Broad street
property.   It may be stated that he is, irrespective of his claim
in this suit, a man of large estate.   As before stated, the divorce
was granted in November, 1879.   The bill in this suit was
filed December 8th, in that year.   It states that the properties
were purchased by the complainant with his own money, and
that the title thereto was put in the name of his wife, in trust,
for the benefit of himself and his wife and family, as such, and
not as a settlement upon her, and it prays that she may be
decreed to convey the South Broad street and Thomas street
properties, and the Warwick street property, to him.   The
defendant, by her answer, denies the alleged trust, and avers
that the conveyances made to her were intended as gifts, and
that the expenditures made by the complainant on the proper-
ties were voluntarily made.

The deeds to the defendant express no trust, nor is there any
written evidence of any.   The complainant claims that a trust
resulted in his favor from the payment of the purchase-money
by him.   When a man purchases land and causes it to be con-
veyed to his wife, the presumption is, that it is a settlement
upon her, but it is a question of intention, and the presumption
may be rebutted.   The burden of proof is upon him.   The bill,
indeed, states, and the complainant testifies, that in placing the
title to the property in the name of his wife, he acted upon the

Lister v. Lister.

urgent suggestion and request of her and John Williams, before mentioned (who, the bill alleges, was on terms of friendly intimacy with him), and because he believed it would be wise to vest in her the title to some of his property, for the benefit of himself and family. But his allegations in this respect are not only not corroborated by anything in the cause, but are flatly contradicted by both his wife and Williams. The former alleges and swears that the deeds to her for the properties in Nichols and Warwick streets, were deeds of absolute gift, and that the Nichols street property was exchanged by her, as her own, for the South Broad street property, and that the Thomas street property was bought by her, on her own account, and for herself, and that all the payments for purchase-money, improvements and taxes &c., which were made by the complainant were either voluntary or in consideration of the occupation of the property, or some part of it, by him with his family. The evidence shows that the complainant recognized the defendant as the separate owner of the property in question, notably by declaring, when the exchange for the South Broad street property was proposed, that she could do as she pleased about exchanging it; that the Nichols street property was her own, and she could do as she liked; and when, in November, 1877, the parties made mutual wills, the complainant told the lawyer by whom the wills were drawn, that the property was her separate estate. By the wills, each gave to the other his or her estate, absolutely. In these instances he declared that the property was her separate estate, and disclaimed all interest in it. She urges that in his petition, filed in the suit for divorce, he states that he has provided for her liberally, and established and furnished for her and his family a comfortable, and even elegant, residence and home (one of the South Broad street houses), and settled upon her that residence, and a large amount of valuable real estate, but he proves, by his solicitor, that the language of that statement is the language of the pleader and not of the petitioner, and, as evidence in the case, the statement of the petition is of no weight.

The deeds for the properties to the defendant are confirmatory of her statement. They express no trust. The deeds for the South Broad street and Thomas street properties convey them to her in fee to her own absolute use. The complainant knew that the title to the properties was granted absolutely to his wife, and that the deeds expressed no trust. Indeed, he says it was part of his design to guard the properties against possible reverses to him in his business, and it is manifest that he would have been perfectly satisfied to permit the title to remain as it was, if he had not been divorced from her. He does not allege that it was mutually understood between her and him that the property was to be his, but that he himself intended, not that it should be his, but that she should hold it in trust for the use of himself and herself and their children. The Nichols street lot, which was bought in 1869, and the Warwick street property were not conveyed by the vendor to the defendant, but to the complainant himself; and, as before stated, he subsequently voluntarily conveyed them to Williams, in order that the latter might convey them to the defendant as he did. The South Broad street property was conveyed to her by the executors of Owen McFarland, deceased, in consideration of the Nichols street properties, and the Nichols street lot, which was bought in 1870, and the Thomas street land, were conveyed directly to her by the vendors. As to the first-mentioned Nichols street properties and the Warwick street property, the defendant's title arose by voluntary conveyance thereof to her, and it cannot be impugned by parol proof of a trust. Says Mr. Hill, in his work on Trustees:

"It is the clear result of the authorities that where a person, a stranger in blood to the donor, and *a fortiori* if connected with him in blood, is in possession of an estate under a voluntary conveyance duly executed, the mere fact of his being a volunteer will not of itself create any presumption that he is a trustee for the grantor; but he will be considered entitled to the enjoyment of the beneficial interest, unless that title is displaced by sufficient evidence of an intention on the part of the donor to create a trust; and he need not bring proofs to keep his estate, but the plaintiff must bring proofs to take it from him." *Hill on Trustees 170.*

And where the deed contains a clause that the estate is had and held to the use of the grantee, his heirs and assigns, to his and their use and behoof, no trust can result; as it is a rule that when a use is declared, no other use can be shown to result. *Perry on Trusts* § *162.* No trust can be shown by parol evidence against a voluntary conveyance. *Hill on Trustees 106, 107.* Nor will the fact that the parties are husband and wife, withdraw the transaction from the statute of frauds. *Perry on Trusts* § *164; Osborn* v. *Osborn, 2 Stew. Eq. 385.* The defendant's title to the Nichols street property, which was bought in 1869, and the Warwick street property, cannot be affected by any evidence in this suit. As to the other properties and the improvements thereon, the proof does not establish the fact that, so far as the complainant's expenditures are concerned, they were not gifts from him to the defendant. The complainant did not cause the South Broad street property to be conveyed to the defendant. She bought it herself, and gave in payment the Nichols street properties, to which she had title.

Again, it should be remarked, the trust which the complainant endeavors to establish is one which was for the benefit of the defendant herself as well as of himself and their children. The complainant relies upon his own testimony as to what was his intention—not as to what was his declared intention at the time of or antecedently to the transactions, but what he now says was his intention at that time. Such testimony was admitted and prevailed in *Devoy* v. *Devoy, 3 Sm. & Giff. 403,* and the decision in that case was followed in *Stone* v. *Stone, 3 Jur.* (*N. S.*) *708,* and Mr. Perry, in his work on Trusts, lays it down on the authority of those cases, that the real purchaser, if otherwise competent, may be a witness to state what his objects, purposes and intentions were in taking the title in the name of his wife or child. *Perry on Trusts* § *147.* On the other hand, it is said by Mr. Lewin, that where a father buys and puts the title in his son, he may prove a parol declaration of trust by himself, either before or at the time of the purchase; not that it operates by way of declaration of trust (for the statute of frauds would interfere to prevent it), but as the trust would result to the father were it

Lister v. Lister.

not rebutted by the sonship as a circumstance of evidence, the father may counteract that circumstance by the evidence arising from his parol declaration. He adds that, of course, the father cannot defeat the advancement by any subsequent declaration of his intention. *Lewin on Trusts 250.* Said Lord Langdale in *Sidmouth* v. *Sidmouth, 2 Beav. 447* : " The law applicable to cases of this nature is subject to so little doubt, that it has not been questioned in the argument of this case. Where property is purchased by a parent in the name of his child, the purchase is *prima facie* to be deemed an advancement; the resulting or implied trust which arises in favor of the person who pays the purchase-money and takes a conveyance or transfer in the name of a stranger, does not arise in the case of a purchase by a parent in the name of a child ; but still the relation of parent and child is only evidence of the intention of the parent to advance the child, and that evidence may be rebutted by other evidence manifesting an intention that the child shall take as a trustee ; and in this case, as in most others of the like kind, the only question is whether there is such other evidence. That cotemporaneous acts and even cotemporaneous declarations of the parent may amount to such evidence, has often been decided. Subsequent acts and declarations of the parent are not evidence to support the trust, although subsequent acts and declarations of the child may be so ; but, generally speaking, we are to look at what was said and done at the time." In view of the established principle that to overcome the presumption of advancement or settlement, the declarations of the father or husband subsequent to the transactions are not admissible, it is impossible to see any ground for admitting his testimony as to what was his intention, unless he declared or expressed such intention before or at the time of the transaction—that is, unless he testifies now as to what he said or did then. But if the evidence in question be considered, it is overcome by the counter-testimony of the defendant and her witnesses.

Nor can any relief be granted on the ground that the defendant has been guilty of adultery, and the complainant has been divorced from her for that cause. In this connection, it is urged

Lister *v.* Lister.

that to permit the defendant, who has been guilty of infidelity towards the complainant, who, for. that cause, has by law been divorced from her, not only to deprive him and their children of all benefit of the property in question, but with it to live, perhaps in luxury, with the partner of her guilt, is contrary to equity, and is a wrong for which equity will find a remedy. But that is·no ground for relief. In *Dixon* v. *Dixon, 8 C. E. Gr. 316*, it was held that a conveyance made by a husband to a trustee, for the use of his wife, on the execution of articles of separation between them, would not be set aside on account of the subsequent adultery of the wife, while living apart from her husband. See, also, *S. C., 9 C. E. Gr. 133*. The adultery of the wife has been held to be no defence· to a suit for specific performance of marriage articles. *Sidney* v. *Sidney, 3 P. Wms. 269.* In a suit for an annuity under an agreement of separation between husband and wife, a plea of subsequent adultery of the wife and a consequent divorce was held bad. *Jee* v. *Thurlow, 2 B. & C. 547; Field* v. *Serres, 4 B. & P. 121; Baynon* v. *Batley, 8 Bing. 256.* See, also, *Forrest* v. *Forrest, 9 Abb. Pr. 289.* In *Seagrave* v. *Seagrave, 13 Ves. 439*, there was a separation between husband and wife on account of the adultery of the latter, and a bond was given by the husband for the support of the wife, and it was held, on bill filed by the wife, that the fact that she had subsequently been guilty of adultery did not disentitle her to relief. · The complainant's right to the·aid of equity depends entirely on the nature of the title of the defendant, irrespective not only of the fact of her adultery, but of his consequent divorce from her. If the equitable title to the land was his when she took the legal title, he would be entitled to relief. And to that end, under the bill, he must establish a trust. His effort to establish a resulting trust has failed, for, as to part of the property, he conveyed it to her by voluntary conveyance, and produces no legal evidence of trust as to that land. As to the rest, at best, he could only claim a resulting trust as to part, for part of the consideration was paid with her property, and he has not overcome the presumption of settlement as

to the consideration which he paid and the money which he expended upon the property. In this case there is no ground for a claim to relief on account of the previous adultery of the wife, unknown to her husband at the time of the settlement, for it is very clear, from his own testimony, that he was well convinced of her infidelity to him before any of the conveyances to her were made. But, however that may be, the bill makes no claim to relief on that ground.

It is urged that, at all events, the complainant is entitled to consideration on the ground that he has a right to curtesy in the property. But if the marriage had not been dissolved he would have no tenancy by the curtesy initiate, and none at all in the property, unless his wife should own it at her death. If the divorce has not destroyed all his claim to curtesy in any event, the possibility that she will own the property at her death, would be no ground for equitable relief. The bill will be dismissed, but without costs.