HENRY BECK, complainant-respondent,

*v.*

MARIE BECK, defendant-appellant.

[Argued November 23d, 1910.   Decided June 19th, 1911.]

1. A husband, a laborer, and his wife, a servant, accumulated property after their marriage out of profits of a saloon business conducted by the wife under a license to the husband, from boarders, and the earnings of minor children;   the savings, with the knowledge of the husband, were invested in real estate, the title to which was taken in the name of the wife.—*Held*, that the evidence fell short of the standard of certain, definite, reliable and convincing proof necessary to rebut the presumption of a gift to the wife.

2. Where husband and wife accumulate property by their joint efforts, and invest it in the name of one of them, there is no presumption arising from their station in life that they intended it to be a common hoard, in which both should be equally interested.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Garrison, whose opinion is reported in 77 *N. J. Eq.* (*7 Buch.*) *51.*

*Mr. Fred Dieffenbach, Jr.,* and *Mr. Hamilton R. Squier* (on the brief), for the respondent.

*Mr. Merritt Lane,* for the appellant.

The opinion of the court was delivered by

SWAYZE, J.

The complainant's bill charges that certain properties, the title to which stands in the name of his wife, the defendant, belong in equity to him because purchased with his money, and the title taken in defendant's name with the agreement that it should be only in trust for the complainant.   He prays a decree that the defendant make deeds so as to vest the title in fee in him.   The

answer denies the material charges of the bill. The learned vice-chancellor held that neither complainant nor defendant was entitled to the whole property; that in equity it belonged to them for their joint benefit as if they were tenants by the entirety. The decree so adjudges. This view necessitated an amendment of the bill, which was permitted, charging that the properties described in the bill were to be held in trust by the defendant for herself and complainant as a common hoard for their joint benefit and lives, and that upon the death of either the moneys and the properties should belong to the survivor. Notwithstanding this change of front, however, the complainant, by his amended bill, prayed in the alternative for a decree either—*first,* that the properties are held by the defendant in trust for the complainant, and that she make deeds to vest the title in fee in him, that he may have full possession and control, and that she may account for the rents and profits; or *second,* that the properties are held in trust during their joint lives, with right of survivorship, and that the complainant have an accounting of the rents and profits. The court thus not only changed the issue as made by the parties, but changed it in a way to which the complainant, even when he amended his bill, was unwilling to yield full assent. The court's conclusion was an inference as to the intent of the parties which is not sustained by pleading or evidence on either side.

The complainant, a laborer, and defendant, a servant, were married in 1885. They lived together until 1908, in New York and in Jersey City, and accumulated the property in question out of the earnings of both, and of their children. During most of the time the complainant worked in a factory, and the wife conducted a saloon under a license in the husband's name. He rendered assistance in the saloon before going to work in the morning and after returning at night. His earnings in the factory seem to have been insufficient for the support of his family, and the savings which were invested in the properties were made possible by the profits of the saloon business and by boarders and perhaps the labor of the minor children. It is immaterial from what particular source the savings came. The funds were mingled, and unless the wife's claim can be sustained on some other ground, the savings cannot be called her individual property. The properties

35

in question were bought at different times, beginning with 1896. The husband knew of the purchases, the first two at or before the time of purchase, and the last two within a short time after. The vice-chancellor based his inference that the savings were the property of both complainant and defendant—a "common hoard"— upon the station in life of the parties, and without evidence to that effect he took judicial notice apparently, that it is the usual customary habit of such people to constitute the wife the treasurer and to turn all moneys from every source over to her. He limited this custom apparently, to what he called "low wage earners," but did not define this term. What might appear high wages to one would appear low wages to a man more fortunately circumstanced. The test is too uncertain, and introduces one rule for one class of people and a different rule for a class with larger income without drawing the dividing line. The circumstances of the parties may often be of great value as evidence of their intention, where their intentions are material to the issue, but the vice-chancellor did not treat his assumption of the customary habit of low wage earners as evidence, but rather as a rule of law. If the writer were to conjecture from his own experience and observation, he would think that the practice among men whose wages seem to him low, who are thrifty and saving, does not vary from the practice of salaried men who would not be called wage earners in the ordinary sense. No doubt in all ranks of society the wife is often made the cashier or treasurer, and it is sometimes done, perhaps, with the view that she will hold the property for the common benefit, but it is also done oftentimes with the intent that the property shall be accumulated in her name and be free from the business risks or the claims of creditors of the husband. If the theory of a common hoard is to be applied where the title is in the wife, it must be equally applicable in similar circumstances where the title is in the husband, and the necessary result would be that the equitable title to property would depend upon a nebulous line of distinction between "low wage earners" and those earning more. In the present case, whether the savings were common property or the husband's property, the title to the real estate was put in the wife. The evidence, instead of indicating that the title was taken in the name of the wife for the purpose of being

held for the joint benefit, indicates rather that it was put in her name either with no agreement at all as to equitable rights, and certainly with no recondite notion of tenancy by entireties, or else for the purpose of securing it against a judgment creditor of the husband. The complainant testifies that his wife said it was better to put the house in her name on account of an outstanding mortgage on a saloon they had conducted in Morrisania, and that he was satisfied with that. Although he adds that his wife said, "It belongs to you as well as to me," this does not avail him in view of his admission that the object was to keep it from a possible creditor. With reference to another property, he distinctly says that she wanted it in her name so that an existing judgment creditor of his could not get it; he says he expressed a desire to pay that creditor, but, in an examination upon supplementary proceedings, he denied the ownership of property; when first interrogated by his counsel, he said that he was satisfied, after they got into conversation about the judgment, that she should take the property in her name; immediately afterwards his counsel, by a most suggestive question, got him to testify to the contrary. Nowhere does he testify to any such arrangement as the vice-chancellor has made by the decree, and the theory of his bill is cogent evidence to the contrary. The funds, far from being treated as a common hoard from the beginning, were kept in separate bank accounts while the parties lived in New York; it was only after reverses there and removal to New Jersey that the wife alone handled the money.

This theory of a common hoard for the joint benefit among low wage earners finds support only in the opinion of the court of chancery in *Fretz* v. *Roth, 68 N. J. Eq. (2 Robb.) 516.* The decree in that case was reversed (*70 N. J. Eq. (4 Robb.) 764*), because we took a different view of the facts of the case other than those relating to the manner in which the funds were kept. We said nothing in our opinion with reference to the vice-chancellor's theory, because it was unnecessary to say anything. We did not reverse his view, because we did not deal with it at all, and it is very unsafe to infer that because we passed it in silence we therefore approved it. If we are to be held to approve every-

thing in the opinion below which we do not expressly disapprove, our labors will be seriously increased.

The conclusion reached in the court of chancery in this case conflicts with the rule established by numerous cases in this court. In *Cutler* v. *Tuttle, 19 N. J. Eq. (4 C. E. Gr.) 549*, Mr. Justice Depue said: "There is no doubt that payment of part of the purchase-money will create a resulting trust to the extent of that payment, but the amounts paid by the different parties must be shown with certainty, and a resulting trust will not be held to arise upon payments made in common by one asserting his claim and the grantee in the deed, when the consideration is set forth in the deed as moving solely from the latter, unless satisfactory evidence is offered, exhibiting the portion which was really the property of each, and establishing the fact that the payment was made for some specific part or distinct interest in the estate." In *Midmer* v. *Midmer's Executors, 26 N. J. Eq. (11 C. E. Gr.) 299* (at *p. 304*), Vice-Chancellor Van Fleet said: "Nothing short of certain, definite, reliable and convincing proof will justify the court in divesting one man of title to lands, evidenced by a regular deed, and putting it in another." The rule was applied by Chancellor Runyon in a case of great hardship where the effect was to leave $60,000 worth of property in the name of the wife, the money for which had been furnished by the husband, although they had been divorced for the adultery of the wife and she was permitted to enjoy the property with her paramour. *Lister* v. *Lister, 35 N. J. Eq. (8 Stew.) 49*, affirmed on Chancellor Runyon's opinion, *37 N. J. Eq. (10 Stew.) 331*. In *Read* v. *Huff, 40 N. J. Eq. (13 Stew.) 229*, where the heirs of the husband sought to establish a resulting trust in lands, the title to which was in the wife, we said (at *p. 234*): "It is also well settled that the proof which shall rebut the presumption of a gift in favor of a child or wife, shall be equally satisfactory and explicit with the proof required to establish a resulting trust; the circumstances relied on must be convincing and leave no reasonable doubt as to the intention of the party." The same rule was recognized in *Duvale* v. *Duvale, 56 N. J. Eq. (11 Dick.) 375*, although in that case the court held that the proof showed that the settlement upon the wife was not of the whole estate in the land but of a limited estate

therein. The present case falls far short of the established standard of proof. It seems rather that the intent of the parties was to vest the absolute title in the wife free of any trust, perhaps with the natural expectation on the part of the husband that they would share the benefits.

The decree must be reversed in order that the bill may be dismissed. The defendant is entitled to costs both in this court and the court of chancery.

*For affirmance*—GARRISON, MINTURN, VROOM—3.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, CONGDON—8.