HENRY C. GORRELL, appellant,

*v.*

ADELAIDE Z. GORRELL, respondent.

[Decided January 19th, 1925.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"At the conclusion of the hearing, I stated to counsel that it was my opinion that the complainant had failed to make out a case which entitled him to the relief he sought touching the real property involved in this controversy and that as to such real property I would deny the prayer of his bill. I also stated that I hoped counsel would be able to reach an agreement concerning the ownership of the personal property in dispute. I further stated that in case complainant should appeal from the decree to be entered, I would file reasons for my conclusions. I am now informed that an appeal has been taken, hence, I file the following reasons:

"Title to both the Cedar Lake and the Millburn land was taken in the name of the wife, at a time when the relations between the parties were fairly amicable, with the knowledge and consent of the husband. The testimony offered in his behalf fails to convince me that any of his money went into the purchase of either tract, or into the building improvements afterward made thereon. He does not claim that he gave any money to his wife specifically to use for the land purchases or for the construction of the buildings. His claim is that he gave her all his earnings, out of which she paid rent, the cost of clothing both of them, household and all general family expenses and that she was able to save therefrom a balance which represents all the money paid for these

tracts and for the buildings thereon. During all their married life, his weekly income at no time exceeded $40 and for that period it averaged $30 per week, except that from August, 1915, to December, 1916, he claims he received $7,000 or $8,000 by gift from persons to whom he gave a stock market tip, all of which extra money he gave to his wife. The Cedar Lake property was purchased and the buildings thereon were erected prior to 1915, so that if such lands and buildings were paid for out of money he earned, it must have been money saved therefrom by her. It is impossible to believe that out of his weekly earnings, the sum required for this investment could have been saved after meeting their living expenses, or that the sum required for the purchase and improvement of the Millburn property in 1915 could have been so saved. He claims that the Millburn lots were purchased with her savings from his weekly earnings, but that the house was built with the extra money he was receiving about that time. She denies receiving $7,000 or $8,000 from him, but admits that she did receive about $2,300 extra money. He says that the house cost about $6,000 to erect and she puts the cost at about $5,000, so that, unless I accept his statement that he gave her at or about this time, $7,000 or $8,000 (of which there is no proof except his own testimony), the difference between the building cost and $2,300 must have come from some other source and, as I have said, I do not think it could have come from her savings from his weekly earnings. It is admitted that at the time of their marriage the wife had money of her own which she kept in her own bank account; that she speculated in stocks, at times with considerable profit, during the whole of their married life; that he gave her the same stock market tip from which he made his extra money, at the time the house was building, which tip she used to her financial advantage, and that she always kept roomers and was allowed to retain the money she received from that source. She then, concededly, had money of her own and she testified it was this money of her own which went into the purchase and improvement of these two

properties, and that for such purpose she not only did not use any money saved from her husband's earnings, but that there were no such savings, and neither did she use the $2,300 extra money, which she admits her husband gave her, in connection with the Millburn property. As to this $2,300, she seems to claim that most of it was paid to her after the building was completed and paid for by her, and that her husband owed her $6,000, because she lost that sum on a bad stock market tip he gave her, and that in performance of a promise to make such loss good to her, he gave her the $2,300. The situation, then, is that her story is as credible as his, and the burden of proof being on the husband, as complainant, to establish his claim, I find that he has not sustained such burden.

"Even had the husband made it appear to my satisfaction that either or both properties were bought with money he gave his wife from time to time, he could not succeed in this suit. The money was given her without reservation or condition. After he knew that title to the Cedar Lake property had been taken in her name, he continued to give her his earnings. He admits that he was aware that she kept depositing the money he gave her in her bank account with other money admittedly her own; that she had sole control over her bank account and drew on it for her stock speculations; that title to both properties was taken in her name with his knowledge and consent, and that the Millburn title was taken in her name to secure it against his possible creditors. Under these circumstances the presumption is that the money he turned over to her was by way of gift to her and to establish a resulting trust in his favor in the money, or in any real and personal property purchased therewith in her name, his proof to rebut such presumption must be certain, definite and reliable, and leave no reasonable doubt in my mind that he did not intend to make a gift to her and in this he has failed.

"I do not deem it necessary to state the reasons which led me to make the disposition of the personal property involved

in the manner indicated in the decree. Counsel agreed as to some of the items. Besides the testimony found in the main case, further testimony was taken as to the ownership of various household articles, and as to my disposition of such articles, I am informed no appeal has been taken and that the testimony with respect thereto will not be printed."

*Messrs. Levitan & Levitan,* for the appellant.

*Messrs. King & Vogt,* for the respondent.

PER CURIAM.

The decree appeal from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS, JJ.   14.

*For reversal*—None.