This bill is by a husband against his wife for an accounting. There can be no serious doubt that the source of the wife's accumulation, and it is considerable, was the husband's weekly wage, turned over to her during a period of nineteen years, and $2,000, proceeds of building and loan shares, and other lump sums. He says that he gave it into her care to save for their old age upon a share and share alike basis; "fifty-fifty," *Page 539 
as he put it. The agreement finds support in the fact that the first five mortgage investments, and later a sixth, were taken by her in their joint names, and in the wife's admission to her sister-in-law and the latter's husband that they had a "fifty-fifty" arrangement.
The case, to the extent it lends itself to relief, is not one of resulting trust in real estate arising from a joint hoard, as in Beck v. Beck, 78 N.J. Eq. 544; nor, as in McGee v.McGee, 81 N.J. Eq. 190, where the husband's funds in the wife's possession were invested by them in land in her name; but is for an accounting of moneys in the hands of the wife belonging to the husband. This the wife may successfully resist by showing a gift, the burden of which is on her. Farrow v. Farrow, 72 N.J. Eq. 421.
But she makes no claim nor offered proof of an express gift. A presumption of a gift by way of a settlement, arising from possession of the funds with his consent, might defeat the husband, but the "fifty-fifty" agreement, which is held to be established, rebuts the presumption.
The parties were married in 1904; they parted in 1923. The cause, and who was at fault, is not now of importance. He was industrious; both were thrifty. His weekly wage ranged from $16 in the beginning to $150 and more towards the end of their cohabitation. Although they were small at the start she was able to save from his and her earnings $2,500, and they bought a house (New England Terrace) in 1909, paying down that sum and giving a $5,000 mortgage for the balance. This house was sold September 1st, 1917, at a profit of $1,000, and the $3,500 cash was used in the purchase of a lot (Grove road) October 25th, 1917, upon which they erected a home. The house was sold February 25th, 1920, at an approximate profit of $6,000, and with part of the proceeds they bought a lot (Fairview avenue) on which they built a home. This was sold in September, 1923, at a profit of $2,000 or thereabouts. The net amount realized was $8,000; $5,000 in cash and $3,000 in mortgages. The titles to these various parcels of land were taken in the wife's name, with the husband's consent, and as to them no resulting trust *Page 540 
is established, and the proceeds belong to the wife. Beck v.Beck, supra; McGee v. McGee, supra; Gorrell v. Gorrell,97 N.J. Eq. 367. There were, however, mortgage investments in addition.
In the accounting we cannot go back beyond the year 1909 when the first property was purchased. All the funds up to that time went into that transaction. Between the purchase of this and the purchase of the Grove road property (October 25th, 1917), investments were made in mortgages in the joint names of husband and wife:
 June 2d 1913, Ellen M. Flanley ........................ $2,000
 August 18th, 1913, Angelo Zuzulo ....................... 2,500
 March 25th, 1915, Angelo Zuzulo ........................ 150
 February 15th, 1916, Carmini Juliano ................... 2,200

The Flanley mortgage was paid off September 12th, 1916, and $1,200 was invested in their joint names in Wille's mortgage, June 22d 1917. Shortly after, the Wille's mortgage was sold and on September 22d 1917, a third mortgage for $350 made by Angelo Zuzulo to both of them. So that when the Grove road property was purchased, October 25th, 1917, the mortgage investments were:
 Zuzulo mortgages ....................................... $3,000
 Juliano mortgage ....................................... 2,200

In buying the lot and building the Grove road house the net proceeds of $3,500 of the New England Terrace house sale were used; a purchase-money mortgage for $5,000 was given and a $2,000 loan made of a bank, and it is a fair assumption that the $1,650, net proceeds of the Flanley and Wille mortgages were used in the construction. The husband having consented to the purchase and construction, is charged with knowledge of the cost and the appropriation of the money, and as to it there can be no accounting.
On February 2d 1920, the wife made the first mortgage investment in her own name on Cappone's mortgage for $3,600. The husband had no knowledge of this or that he *Page 541 
was not included in the later mortgages until after the separation. The sale of the Grove road property (February 25th, 1920) yielded $12,500 cash, and of this there was invested in the purchase of the Fairview avenue lot $3,400; Whitmore mortgage, taken in the name of both, $4,000; Traccone mortgage, taken in the wife's name, $4,500. The Traccone mortgage the defendant still has. The Whitmore mortgage was canceled shortly after it was taken and the proceeds, in all probability, were used in the erection of the Fairview avenue house.
Between the purchase of the Fairview avenue property in 1920 and its sale September 1st, 1923, the defendant made mortgage investments in her own name:
 Manana ................................................. $2,500
 Heller ................................................. 4,500
 De Vingo ............................................... 3,500
 De Vingo ............................................... 500
 Scarpa ................................................. 1,000
 _______
 Total ............................................ $12,000

During this period her husband's salary was the largest. His federal income tax report shows that his wage in 1919 was $5,386; in 1900, $5,900; in 1921, $6,200, and in 1922, $5,000. In the meanwhile the Juliano mortgage of $2,200 and that of Cappone for $3,600 were paid off and it is to be assumed the sums were reinvested in the mortgages just mentioned or in those hereafter listed. The net proceeds of the sale of the Fairview avenue property was $8,000, represented by cash $5,000 and a $3,000 (Howe) purchase-money mortgage (post). The $5,000 was invested in a mortgage made by Jandolin (post).
At the time of the separation the mortgage investments held by the wife were:
 Tracone ................................................ $4,500
 Howe ................................................... 3,000
 Jandolin ............................................... 5,000
 Zuzulo ................................................. 3,000
 Heller ................................................. 4,500
 *Page 542 
 De Vingo ............................................... $3,500
 De Vingo ............................................... 500
 Scarpa ................................................. 1,000
 English ................................................ 4,000
 Hurley ................................................. 1,000
 _______
 Total ............................................ $30,000

The first three are accounted for. The Tracone mortgage is part proceeds of the sale of the Grove road property, and Howe and Jandolin mortgages the proceeds of the sale of the Fairview avenue property; a total of $12,500. These need no further accounting. The Manana mortgage of $2,500 had been paid off and must be assumed to be reinvested. The balance, $17,500, must be accounted for.
After the purchase of the first property in 1909 the wife had no income except from her husband and the investments, unless it be, as she says, from the rent of the New England Terrace property, which was sold in 1917. The proof is that the rent about met the carrying charges. She claims to have earned since 1909 about $600 in driving a car; $50 profit in the sale of two second-hand automobiles; $36 in teaching three persons to drive, and $500 in lending money on automobiles, perhaps on twenty occasions at an average profit of $25 a deal. This claim has not been controverted and she is entitled to credit for the items. Of the net amount she will account for one-half with interest from the date of the last investment. It will be assumed that the interest on investments prior to that time has expression in mortgage reinvestments.
This summary is open to modification, and if the wife can specifically discharge herself of any other amount she will be given an opportunity on an accounting, which will be ordered. *Page 543