The testimony in this case is very meagre. The complainant is a woman seventy-eight years of age, and very obviously suffering from the ravages of time. It is impossible to reconstruct from her testimony, with any degree of certainty, the facts and circumstances surrounding the transaction which is the subject of this litigation.
The suit is brought to establish, on behalf of complainant, a trust in a farm situated in Gloucester county, New Jersey, which was acquired by one Frederick Ritter thirty years ago, *Page 213 
and to enjoin an ejectment suit at law. Frederick Ritter is now dead.
In 1885 complainant married Louis Mertz; in 1892 Mertz deserted her; she was then conducting a meat and provision business in Philadelphia, Pennsylvania; a few months thereafter Frederick Ritter came to work for her, and a few years later the business was conducted in Ritter's name by Ritter and the complainant, and was so continued until Ritter's death in 1934. In the meantime Louis Mertz died, and in 1918 Ritter and complainant were married.
Therefore, at the time the farm in question was acquired by Ritter (1909) he was a single man, although it is intimated in the bill of complaint that he and complainant were living together as man and wife — the statement in the bill (paragraph 4) is "that a certain meretricious relationship had grown up between her and the said Frederick Ritter."
The bill alleges that complainant supplied the purchase money for this farm, but had title made to Ritter, and that a trust resulted in complainant's favor. Again the bill alleges an agreement between Ritter and complainant that the ownership of all property, real and personal, should be in both even though the record title be taken in the name of Ritter. And again, the bill alleges that by virtue of an agreement between Ritter and complainant, the property taken in his name was to belong to both of them as tenants by the entirety.
But it is impossible to find in the proofs adequate, definite, and certain support for any of the propositions stated in the bill. Possibly the last one is more nearly indicated by the testimony of complainant and of Mrs. Carr, who was Mr. Ritter's nurse at the time of his death; however, the parties were not married until 1918, whereas the farm was purchased in 1909.
Mrs. Ritter's memory is obviously not reliable concerning events which transpired so long ago. Early in her direct examination, she complained that her "mind is so bad;" she said Mr. Ritter made the arrangements for the purchase of the farm, but that she had put up the money; she could not remember how much was paid, nor could she even approximate the amount. It is probable, too, in the light of her *Page 214 
testimony on cross-examination, that the purchase price was paid out of the "joint money" which they both earned from the operation of the business. Long before the purchase of this farm, apparently, the profits of the business had been treated as their joint property. When asked, "what did you do with this money you had together?" she said, "then we bought a farm down here in New Jersey."
The only other witness was Mrs. Carr. While her testimony is of doubtful assistance, because she knows only what was told her by the Ritters, it indicates at best that the parties believed that their relationship as husband and wife would result in the survivor's acquisition of all property left by the one first dying. She was not told who supplied the purchase money for any of the property. "Nothing short of certain, definite, reliable and convincing proof, will justify the court in divesting one man of title to lands, evidenced by a regular deed, and putting it in another." Midmer v. Midmer's Executors, 26 N.J. Eq. 299. In following this case, Vice-Chancellor Lewis said, in Samson v.Wentworth, 108 N.J. Eq. 247, 249: "With all the more force and reason should this salutary principle of law be applied to a case, such as the one now before me, where the claim is asserted and the evidence in question produced for the first time, only after the lips of the alleged trustee have been sealed by death and the possibility of even contradicting the alleged admission has been thereby eliminated."
The situation in the case of Duvale v. Duvale, 54 N.J. Eq. 581; 56 N.J. Eq. 375, cited by complainant, is considerably different from that presented in the case sub judice. There a husband purchased real property and had the title made to his wife upon her promise that she would execute a will in his favor which would vest the legal title in him upon her death; when she hesitated to keep her promise, the husband ceased the improvement of the land which was designed to greatly enhance its value; the wife then executed a will, and the improvement was resumed and completed. Afterward the wife destroyed her will. Not alone on the theory of trust, but also to secure to the complainant the fruits of the inducement which led him to supply the consideration, the chancellor *Page 215 
fixed upon the property a liability to answer the wife's promise. On appeal by the wife, this portion of the chancellor's decree was unanimously affirmed, the court saying (at p. 385): "Upon these facts it is plain that it would be inequitable to permit appellant to disregard her agreement to devise the land to respondent, which agreement had induced respondent to purchase the tract first conveyed to her and to expend large sums of money upon it. Such an agreement is an enforceable contract, and a court of equity may intervene to require its enforcement." Moreover, in the Duvale Case, the fact that the complainant furnished all the money for the purchase and improvement of the land was not questioned.
In the present case there is no proof of any agreement to reconvey or to devise; and the testimony concerning the source of the purchase money is vague, uncertain, and wholly uncorroborated.
In these circumstances it would be a highly dangerous precedent, and a most unwise one, to unseat a long vested title, especially after the death of the grantee.
So far as the suggestion of improvidence is concerned, the case is barren of any proof at all on that subject; for all that appears herein, the business which the parties conducted in Philadelphia for twenty-five years after the purchase of the farm, was a profitable one. Vice-Chancellor Backes, in Yetman
v. Hedgeman, 82 N.J. Eq. 221, found that the husband and wife there (p. 227, bottom), "were poor, and they labored hard and stinted and strived to get a home, a home in which to spend their declining years. All that the complainant earned and could save was devoted to this single purpose, and it is only reasonable to assume that neither party entertained the idea that by taking the title to the land in his wife's name, the complainant intended to strip himself of all that he had in the world." The situation in the instant case is entirely different.
I feel constrained, though entertaining the utmost sympathy for complainant, to advise a dismissal of the bill. *Page 216