Not uncommonly, where the concord of marital faith ends, strife begins. Such an exigency has kindled the present litigation. *Page 514 
The complainant and the defendant James H. Strong were married in 1928. Each upon recriminatory accusations is seeking in this court a dissolution of the marriage. The present cause, however, injects a controversy between them concerning the ownership of property. Endeavors to assuage the conflict involving the property by mutual concessions have failed. Therefore, the law must pursue its course.
Mr. Strong graduated from the United States Naval Academy at Annapolis in 1913 and engaged in the service of the navy until 1934 when he resigned with the rank of lieutenant-commander. The following year he accepted a position with the Colombian government as a military consultant at an annual salary of $24,000. He retained that position for one year. He had been seriously cogitating for some time the design and eventual production of some structural and mechanical device for the training of individuals with reasonably assured safety in the use of parachutes. He acquired several basic patents, and in 1936 he was undoubtedly eager to subject his plans to actual experimentation. He accordingly became associated with Mr. Switlik, presumably in the relationship of partners, in the endeavor to materialize his project. A tentative tower was erected on some land owned by Mr. Switlik near New Egypt, New Jersey, and operational experiments were inaugurated. The tower, it is said, displayed a somewhat spurious appearance and dummy objects were elevated to the top by means of a cable attached to a motor truck.
Despite the conflicting testimony, there remains an inclination to believe that Mrs. Strong was skeptical; her observation of the crudity of the structure and of the operations contributed to her suspicions that the objective by which her husband seemed to be entranced was visionary and fanciful. Mrs. Strong was then residing at a much less commodious and less spacious residential property than that previously occupied by her and her husband. Reference to these incidents is permissible because they were probably among the variety of factors of gradational significance which fashioned the subsequent conduct of the parties.
The sequential occurrences of materiality are that a corporation *Page 515 
was organized and named "Safe Parachute Jump Company;" Mr. Switlik personally contracted on August 21st, 1935, to purchase a tract of level land in Washington Township, Mercer County, New Jersey, from The First-Mechanics National Bank of Trenton upon terms which accorded him immediate and continued possession contingent upon monthly payments on account of the purchase price, and it was upon this property that two experimental towers were promptly erected and also a shop 14 by 16 feet in dimensions. In January, 1936, Mr. Strong acquired the stock of Mr. Switlik in the corporation, and Mr. Switlik assigned to Mrs. Strong his contractual right to purchase the tract of land. On February 24th, 1936, Mr. Strong notified the bank by letter of the assignment of the contract by Mr. Switlik to Mrs. Strong.
It was also in 1936 that Mr. Strong divulged to his wife his purpose to construct a suitable dwelling house on the property to be acquired from the bank with a subsidiary portion of it adaptable to the architectural and mechanical development of his contemplated parachute contrivances. He resolved to consummate the purchase of the property; he chose to borrow funds on a government veteran's policy of insurance of which his wife was the designated beneficiary, deposited the proceeds of the loan to the credit of her personal bank account, directed the bank to convey the property to her, and on October 27th, 1936, she paid by her own check the balance of the purchase price amounting to $3,081. Incidentally, Mrs. Strong initially protested that the insurance policy of $5,000 payable to her in the event of her husband's death was her only financial safeguard, and Mr. Strong appeased her despair by informing her that he would have the property conveyed to her. By deed dated November 17th, 1936, the tract of land was conveyed by the bank to the complainant "her heirs and assigns, to the only proper use, benefit and behoof" of Mrs. Strong, "her heirs and assigns forever."
During 1937 while the house was in the course of construction, Mrs. Strong with the consent of her husband visited her relatives at Seattle, Washington. During her absence the State Highway Commissioner determined to acquire a *Page 516 
portion of the premises for highway purposes, and Mr. Strong caused to be prepared a general power of attorney by which Mrs. Strong empowered him, inter alia, to "grant, bargain and sell * * * all my land and real estate or any part thereof" and "in my name to make, execute, acknowledge and deliver good and sufficient deeds and conveyances for the same * * *." The instrument was dispatched to Mrs. Strong for execution. She declares that her husband impliedly represented that the sole purpose of the document was to enable him to consummate the sale of the small parcel desired by the state. She executed and acknowledged the instrument on May 19th, 1937, and returned it to Mr. Strong.
In 1941 when the marital relations of Mr. and Mrs. Strong disintegrated, he originated a corporation to be known (with no false modesty) as "Stronghold, Inc.," and to be utilized by him as an invulnerable receptacle for the retention of his own assets. On September 30th, 1941, a deed was made in terms designed to convey the tract of real estate to Stronghold, Inc. The deed was executed by Mr. Strong in his individual capacity and by him as attorney in fact of Mrs. Strong, in the exercise, he claims, of the authority conferred upon him by the power of attorney. Mrs. Strong, who has continued to reside on the property, had no knowledge of the deed until some information concerning it was imparted to her by a tax collector. Mr. Strong frankly acknowledges that Stronghold, Inc., is his personal implement, that no consideration whatever was paid for the conveyance to the company and that his purpose was "to protect my own interest and prevent her from deeding this to some third person * * *"
Succinctly stated, the complainant seeks a decree annulling the deed to Stronghold, Inc., and restoring to her the title to the premises. Mr. Strong avers that the property is his own and that the complainant has no beneficial interest or estate in it.
The solicitor of the defendant Strong characterizes the complainant's contention as "an ambitious attempt at a triumph of form over substance." *Page 517 
Nevertheless, certain principles applicable to a case of this nature are too firmly inwrought in our jurisprudence to be either neglected or evaded. Assuredly there are transactions between strangers in which the payment of the consideration for the conveyance draws to it a presumption of the beneficial ownership, but where the parties are attached by the relationship of husband and wife and the husband pays the consideration of the purchase of lands and has the conveyance made to his wife, the presumption is that a gift or settlement was intended. The presumption does not command conclusive effectiveness. It may be demolished by definite, trustworthy and convincing proof of a contrary intention. Yet, where the wife's title is evidenced by a duly executed and recorded deed made at the express request of the husband which declares by its terms that she is to hold the premises for her own exclusive use, public policy concerned with the stability of titles also recommends that the apparent authenticity and efficiency of the deed should not be diversified except upon satisfactory and explicit proof of a contemporaneous intention inconsistent with the grant manifestly exhibited by the deed. Of the numerous authorities, only a few of the more familiar need be cited: Peer v. Peer, 11 N.J. Eq. 432; Midmer
v. Midmer's Executors, 26 N.J. Eq. 299; affirmed, 27 N.J. Eq. 548; Linker v. Linker, 32 N.J. Eq. 174; Lister v. Lister,35 N.J. Eq. 49; affirmed, 37 N.J. Eq. 331; Read v. Huff, 40 N.J. Eq. 229; Duvale v. Duvale, 56 N.J. Eq. 375; 39 Atl. Rep. 687;Selover v. Selover, 62 N.J. Eq. 761; 48 Atl. Rep. 522; Herbert
v. Alvord, 75 N.J. Eq. 428; 72 Atl. Rep. 946; Beck v. Beck,78 N.J. Eq. 544; 80 Atl. Rep. 550; Thomas v. Thomas, 79 N.J. Eq. 461; 81 Atl. Rep. 748; McGee v. McGee, 81 N.J. Eq. 190;86 Atl. Rep. 406; Hood v. Hood, 83 N.J. Eq. 695; 93 Atl. Rep. 797;Andreas v. Andreas, 84 N.J. Eq. 375; 94 Atl. Rep. 415;affirmed, 85 N.J. Eq. 210; 96 Atl. Rep. 39; Prisco v. Prisco,90 N.J. Eq. 289; 110 Atl. Rep. 111; Gorrell v. Gorrell, 97 N.J. Eq. 367; 127 Atl. Rep. 346; Mott v. Iossa, 119 N.J. Eq. 185;181 Atl. Rep. 689; Ritter v. Ritter, 125 N.J. Eq. 212;4 Atl. Rep. 2d 846; Hill v. Lamoreaux, 132 N.J. Eq. 580;30 Atl. Rep. 2d 833; 4 Pom. Eq. Jur. (5th ed.) § 1039. *Page 518 
The defendant Mr. Strong expressly instructed the bank to grant the title to the premises absolutely to his wife. The deed to Mrs. Strong was made with a full understanding by Mr. Strong of its evidential effect. No fraud is intimated. The deed itself discloses no intent to create a trust in favor of Mr. Strong and the evidence fails to reveal any extraneous agreement, precedent or contemporaneous, between him and his wife that a resulting trust was intended. Nothing repels the inference that Mr. Strong would have been content to permit the title of the property to remain vested in his wife if the nucleus of their estrangement had not intervened. His intention at the time of the transaction is the notable one, and not some more omniscient intention which he may now have reason to profess. Lister v. Lister, supra;Frink v. Adams, 36 N.J. Eq. 485; Doughty v. Miller, 50 N.J. Eq. 529; 25 Atl. Rep. 153; J.W. Pierson Co. v. Freeman,113 N.J. Eq. 268; 166 Atl. Rep. 121; Bankers Trust Co. v. Bank ofRockville, c., 114 N.J. Eq. 391, 400; 168 Atl. Rep. 733.
The presumption of a gift or settlement may be rebutted by circumstances precedent to, or contemporaneous with the transaction, or so proximately contemporaneous as to be part of the res gestae. It is elementary that a resulting trust arises by operation of law from contemporaneous circumstances which give the legal and equitable titles different directions at the instant the deed is taken and the legal title is vested in the grantee. Krauth v. Thiele, 45 N.J. Eq. 407; 18 Atl. Rep. 351.
The circumstance that Mr. Strong now believes that his wife has since been guilty of infidelity, even if the supposition is justifiable, does not eradicate the legal presumption of the donative intent. Indeed, in more extreme cases, where the adultery of the wife and the occupancy of the property by her and her paramour have been established, the presumption of the gift has predominated. Vide, Lister v. Lister, supra; Beck v.Beck, supra.
Mr. Strong states that in building the home he was motivated by considerations of the comfort and happiness of his wife, supposing, of course, that by reason of the matrimonial relationship he too would share in the enjoyment of the *Page 519 
property. As he expresses it: "I did my utmost to make her happy." Another explanation is that Mr. Switlik recommended to Mr. Strong that in the circumstances it would be better business policy to hold the title in the name of Mrs. Strong. If Mr. Strong also resolved to successfully detach or seclude this property from the exigencies of a possible business adversity, then it must be inferred that he intended the conveyance to Mrs. Strong to transport to her something more than a naked record title. Vide, Hood v. Hood, supra; Andreas v. Andreas,supra.
It is mutually conceded that the beneficial ownership of the property was never drawn in question until Mrs. Strong became aware of the deed to Stronghold, Inc. Mr. Strong never requested his wife to convey the premises to him or to execute any instrument to evidence his alleged interest in it. It is recalled that Mrs. Strong was in Seattle when the power of attorney was obtained.
Some of the events in which Mr. Strong has admittedly participated noticeably savor of admissions against interest in his present assertion of original ownership. In April, 1939, a portion of the land was let to one William Geiger. Mr. Strong escorted his wife to the office of the attorney where the lease was, in his presence, prepared and executed by Mrs. Strong as the owner of the demised premises. The rent was thereafter paid to Mrs. Strong. It is significant that at the time of that transaction Mr. Strong had the power of attorney and did not employ it because, as he states, "she was present." Additionally the books of Safe Parachute Jump Company, of which Mr. Strong is an officer and the principal stockholder, contain entries made by Mr. Strong of the payment to Mrs. Strong of a rental of $2,400 for each of the years 1941 and 1942 for those portions of the property used by the company in its business. When asked why the company had not paid rent to Mrs. Strong prior to 1941, Mr. Strong replied, "The company hadn't made any money up to that time."
The improvements appurtenant to the premises were undoubtedly made by Mr. Strong with his own funds, but made by him voluntarily. It is not evident that they were *Page 520 
made at the request of his wife or pursuant to any understanding that he would be reimbursed by his wife for his outlay. The improvements follow the title. Selover v. Selover, supra;Hood v. Hood, supra; Prisco v. Prisco, supra.
It is proposed that in making such a settlement upon his wife, Mr. Strong impoverished himself. His indigence, then and subsequently, is not manifested by the evidence. In 1935 he received a salary of $24,000. In 1936 he had to his credit (or in storage) "about $12,000 or $15,000" in the National City Bank of New York and another account in a bank in Philadelphia. Then in prospect was a contract with the Rumanian government from which he in fact derived $10,000. He financed the trip taken by his wife to Seattle and on one occasion forwarded to her $1,200 for her personal use. In 1938 he was able to borrow $7,000. He earned at least $6,665 in 1939 and $7,000 in 1940. He confesses that since 1941 the income of his company "has become considerable."
The awkwardness of the situation in which Mr. Strong has placed himself is not unappreciated, but a resulting trust cannot be created by misfortunes arising ex post facto. Normally, the question of "what is mine and thine" does not intrude between those united in harmonious wedlock. Mr. Strong emphasizes now the adoration in which he then regarded his wife. He recognized her anxiety, yet retained undiminished faith in his enterprise. He sought to tranquilize her apprehensions by providing her with a comfortable home and the title to the property. Other inducements of a gratifying character were probably also considered. The presumption that it was the intention of Mr. Strong to voluntarily bestow the absolute and beneficial title to the premises upon his wife has not been repulsed by contradictory proof of the requisite degree of clarity and persuasiveness. Hence, the deed to her cannot justifiably be qualified as desired by the defendant Strong.
In the circumstances, Stronghold, Inc., cannot assert an adverse title to the property through the medium of the power of attorney. The husband may be empowered by his wife to *Page 521 
act as her agent in the management and disposal of her property, but, when he does so, the validity of his acts will be determined, and the extent of his powers measured, as in the case of other agents, by the scope of authority conferred and the obligations of fidelity to the interests of the principal.Atwater v. Underhill, 22 N.J. Eq. 599. An agent is not permitted to assume two distinct and opposite characters in the same transaction, in one of which he acts for himself, and in the other pretends to act for his principal. Porter v. Woodruff,36 N.J. Eq. 174. The law on this subject rests on the highest considerations of justice and safety. Le Gendre v. Byrnes,44 N.J. Eq. 372; 14 Atl. Rep. 621. Stronghold, Inc., is essentially nothing more than a corporate appellation adopted by Mr. Strong for his own purposes. In resorting to the power of attorney in the execution of the deed granting the premises nominally to Stronghold, Inc., yet beneficially to himself, Mr. Strong perverted his authority to his own personal advantage, and his act in secret hostility to the interest of his principal transcended the power afforded him. 2 Am. Juris. "Agency," §§98, 253.
Other issues produced by the pleadings were either expressly abandoned at the hearing or left without proof. Counsel may submit an appropriate decree. *Page 522