The parties to this cause are husband and wife. They were married on November 30th, 1944. Dissension has incited the present litigation. The husband complains of three separate grievances, which can be concisely described. He declares that on November 9th, 1942, he contracted to purchase a parcel of land with a dwelling house thereon in the City of New Brunswick, Middlesex County. The sale was consummated on April 27th, 1945. He divulges that at the time of the conveyance he lacked sufficient funds with which to pay the balance of the purchase price and that he borrowed a *Page 530 
relatively small sum from his wife which he applied to that purpose. He also acknowledges that he caused the title to the premises to be conveyed to himself and to his wife without inserting in the deed of conveyance any modification of her apparent estate. The complainant now asserts that there was, nevertheless, a mutual understanding between his wife and himself that upon the repayment to her of her contribution to the purchase price, she would transfer her interest in the premises to him. He alleges that although he has not directly and explicitly reimbursed his wife, she has since the conveyance continuously collected the rents derived from the premises, which receipts he insists are, in the aggregate, grossly in excess of the amount of her contribution. A decree is sought commanding the defendant to eradicate in favor of the complainant her ostensible estate in the premises.
The second cause of action is designed to obtain from the defendant an accounting of the income from the property; the object of the third cause is to compel the defendant to surrender to the complainant the possession of certain specified articles of personalty, or (in accordance with a supplement to the bill) compensate the complainant for such articles as she may now be unable to restore to him.
At the final hearing the defendant through her counsel expressed her willingness to supply the complainant with a true account of the income received and the expenses defrayed in her management of the parcel of real estate and to relinquish possession of the designated chattels.
Other than the deed and some relevant exhibits substantiating the undisputed facts, the only testimony relating to the first cause of action was that of the complainant himself. Counsel for the defendant, evidently concluding that the testimony of the complainant was inadequate in weight and quality to confute the express terms of the deed with its accompanying presumption of a gift or settlement, refrained from introducing any testimony on behalf of the defendant and requested a decree dismissing that cause of action.
Perhaps counsel for the defendant has mistaken the purport of the cited decision rendered in Pappalardo v. Pappalardo, *Page 531 136 N.J. Eq. 527; 42 Atl. Rep. 2d 709. Vice-Chancellor Kays stated (at p. 528): "The placing of the title to the main tract in the name of the complainant [wife] was, I am satisfied, intended by the defendant Dominick as a gift to his wife. Such is the presumption of law and in the absence of definite, trustworthy and convincing proof of a contrary intention the presumption prevails. Strong v. Strong, 134 N.J. Eq. 513;affirmed, 136 N.J. Eq. 103. The testimony of the defendant husband that he did not intend to make a gift to his wife does not meet the aforesaid standard." The Vice-Chancellor was characterizing "the testimony of the defendant husband" in that particular cause. He did not say or intend to say that the presumption cannot in any such case possibly be overpowered by the testimony of the preinferential donor.
Hence, in the consideration of the cause of action first alleged in the bill, the supremely crucial question is whether the legal presumption of a gift of the estate to the wife has been defeated by the testimony of the complainant. I had occasion to congregate the reported authorities pertinent to a case of this nature in Strong v. Strong, supra, to which the Vice-Chancellor referred in Pappalardo v. Pappalardo, supra.
An examination of those authorities reveals the impressive burden of proof justifiably imposed upon the complainant. The requisite proof, as described by the cases, must in quality and character be "definite," "reliable," "trustworthy," "convincing," "leaving no reasonable doubt of the intentions of the parties." I am constrained to conclude that the testimony of the complainant, scrutinized in the light of the surrounding factual circumstances and in the view of his own conduct, does not rise to the required standard of convincing proof.
At the time of the purchase of the property, the parties were living in harmonious wedlock. Doubtless, marital concord was then expected to be incessant. Both were pursuing remunerative occupations. They continued to cohabit in a residence owned by the defendant. Before the purchase of the property here involved there were discussions between them of a proposal that she "put his name on her papers," *Page 532 
and that he "put her name on his." In the acquisition of the premises on April 27th, 1945, the complainant voluntarily and intentionally, and without any fraudulent inducement, acted in that manner.
The donative inclinations of the complainant existent then and during the ensuing year and, indeed, until the estrangement and separation of the parties on October 24th, 1945, are evinced by the course of conduct pursued by the parties in their business affairs. The defendant had advanced the modest sum of $134.35 toward the payment of the purchase price of the premises. The complainant states that it was his habit to surrender to his wife his weekly wages of $70 to $80, withholding therefrom only a "few nickels." The property here implicated was renovated to accommodate itself to the rental of rooms and yielded an income of $49 a week, which the complainant permitted the defendant currently to collect.
Obviously the so-called loan could have been very promptly discharged. Such is the admission of the complainant, and yet it is not evident that any effort was exerted by the complainant to induce his wife to relinquish her estate in the property until discord had terminated their conjugal associations. The assertion of the complainant that the conveyance was merely to secure the defendant for the recovery of her outlay seems to be a present stratagem concocted by him flagrante bello. His intention at the time of the transaction is the notable one, and not some more omniscient intention which he may now have reason to profess.
There is an adjunctive matter to which I must allude. At the inception of the final hearing, counsel for the complainant requested leave to supplement the bill of complaint to allege that the complainant in bestowing a tenancy by the entirety upon his wife, did so upon the implied condition that their affectionate and harmonious relations would endure throughout their lives. I resolved to defer the consideration of the application so to amend the bill until the conclusion of the complainant's case. I had no doubt that an express
understanding of that import would be accorded recognition. Counsel for the complainant respectfully contended that to suppose *Page 533 
a husband and wife would in any case expressly enter into such an agreement would be fantastic. I think not. Antenuptial agreements and marriage settlements, although perhaps uncommon, are not unimaginative or novel.
It seems to me to be inconsequential whether the subject matter of the gift is an estate in fee-simple or an estate by the entirety. If there is to be such a distinction, let it be originated by the Court of Errors and Appeals.
For the present I must heed the words of Vice-Chancellor Stevenson in Warren v. Warren, 88 N.J. Eq. 612;104 Atl. Rep. 823, which received the approval of the Court of Errors and Appeals: "When the relations of the man and his wife cease to be harmonious, when divorce or separation comes, the man finds himself disappointed in his expectations, and he very much regrets the disposition of property which he theretofore made. No doubt there are situations of this kind where there is hardship, and some future laws may provide for the readjustment of family settlements in case of divorce. Under our present system of laws the destruction of harmonious and confidential relations between man and wife, their complete estrangement, and even divorce, create no new equity in favor of the husband with respect to land which he originally donated to his wife when both parties contemplated that their affectionate and confidential relations would endure throughout their lives, and that both would therefore share in the benefits of the donated property." Vide, also, Lister v. Lister, 35 N.J. Eq. 49; affirmed, 37 N.J. Eq. 331; Beck v. Beck, 78 N.J. Eq. 544; 80 Atl. Rep. 550; Cf.Whittle v. Schlemm, 94 N.J. Law 112; 109 Atl. Rep. 305.
Here the marriage between the parties has not been dissolved. The parties have become uncongenial and they have indulged in a violent quarrel, an embroilment which has caused them to live apart. In the existing state of our law I am not at liberty to inject such a condition into the deed by mere implication, and consequently I am not persuaded that the proposed amendment of the bill would in the circumstances charge any meritorious cause of action. The application to enlarge the allegations of the bill in that particular is accordingly denied. *Page 534 
The complainant, however, is entitled to an accounting.Neubeck v. Neubeck, 94 N.J. Eq. 167; 119 Atl. Rep. 26.
He is also entitled to have possession or reasonable compensation for the specified articles of personal property.
A decree will be advised in accordance with the conclusions herein expressed.