DAVID SCHULER, complainant-respondent,

*v.*

HELEN SCHULER, defendant-appellant.

[Submitted May 26th, 1933. Decided September 27th, 1933.]

*Mr. Frank J. V. Gimino,* for the appellant.

*Mr. Jacob Friedland* (*Mr. Joseph M. Alsofrom,* of counsel), for the respondent.

The opinion of the court was delivered by

WELLS, J.

This is the appeal of the defendant below from a decree in favor of the complainant, affirming a master's report (except as to the allowance of interest) and adjudging that there is due and owing by defendant, Helen Schuler, to her husband, David Schuler, the complainant, the sum of $4,014.79.

The material allegations of the bill of complaint which are in issue on this appeal are that respondent was lawfully married to appellant on July 17th, 1911; that they lived together until September, 1923; that during all that time respondent turned over all his earnings to appellant under an agreement that the savings would belong to him; that with the proceeds thereof certain property known as 520 Shippen street, Union City, was purchased in the name of the appellant, which was shortly thereafter sold—the net proceeds thereof being $8,000 of which $1,500 was paid in cash to appellant-wife, and $6,500 thereof in the form of a purchase-money first mortgage was also taken in her name; and immediately after the sale of that property, appellant deserted respondent. The bill prays for an accounting.

In her answer appellant admits the marriage, but denies the validity thereof; and also admits the purchase and sale of the Shippen street property and also the reinvestment of the funds in the mortgage as alleged in the bill of complaint, but denies that the money was that of respondent, or that

respondent ever gave her any moneys in excess of their living expenses but asserts that this property was purchased with her own earnings exclusively.

After hearing the testimony, the vice-chancellor found that the Shippen street property was equally owned by respondent and appellant and decreed an accounting and referred the matter of the account to a master and directed the master also to ascertain and report whether respondent had a wife other than appellant, living at the time he filed his bill in this cause.

The master reported that there was due respondent from appellant the sum of $4,014.79, with interest from August 1st, 1923, and that respondent had no wife other than appellant living at the time he filed his bill.

Appellant filed exceptions to the master's report and the vice-chancellor confirmed the master's report, except as to the interest which he disallowed.

Appellant, on her brief, presents four points why the decree should be reversed.

The first point is that the respondent was in *laches*.

The bill alleges and respondent admits that the parties separated in the month of September, 1923, and they have lived separate and apart ever since.

From that date to December 10th, 1930 (filing date of bill), no suit was instituted.

Appellant concedes that the policy of the law being to prevent litigation between husband and wife, neither laches nor limitations can be urged by either spouse pending the continuance of the marital relation. *Bennett* v. *Finegan, 72 N. J. Eq. 155.* Nevertheless appellant insists that where the marital status is shown to have been interrupted as in the instant case, both laches and limitations may be invoked by *the injured party*—citing *Dunham* v. *Adams, 82 N. J. Eq. 265.*

Assuming the soundness of the rule laid down in the *Dunham Case,* it is not applicable here. The wife failed to prove that she was the injured party. She claimed that her husband choked her upon her refusing his advances and that

his cruelty was the cause of her leaving home. Her evidence fell far short of proving a matrimonial offense by the husband justifying her desertion. The testimony clearly indicates that immediately after she sold the Shippen street property and had the proceeds thereof safely in her possession, she left her husband, and went to live with another man.

The court below was fully warranted by the evidence in regarding the respondent and not the appellant as the injured party. She, therefore, is in no position to invoke in her behalf the suspension of the policy of the law as to laches and limitations as between husband and wife, which perhaps she might have done had the court found as a fact that the husband was responsible for the interruption of the marital status.

Nor do we think that this is a case like *Lutjen* v. *Lutjen, 64 N. J. Eq. 773,* relied upon by appellant, where this court held that lapse of time alone is to be deemed sufficient ground of estoppel when the court cannot feel confident of its ability to ascertain the truth now as well as it could when the subject of investigation was recent, and before the memories of those who had knowledge of the material facts have become faded and weakened by time.

We held in the *Lutjen Case* that to constitute estoppel of this description, it is not essential that any actual loss of testimony through death or otherwise, or means of proof, or changed relations, to the prejudice of the other party should be proved to have occurred.

There has been no inflexible rule adopted by the courts fixing any exact period of time as a bar to relief in such cases.

It does not appear that appellant was in any way prejudiced by the delay in bringing suit. She and her witnesses were all available.

The respondent testified he frequently called upon his wife and demanded money and that she paid him sums on account, and upon her finally refusing to pay any more, the suit was brought.

We find no merit in appellant's first point.

The second point raised by appellant is that respondent was not entitled to an accounting because he did not sustain the burden of proof.

It is argued that the testimony shows that there was no express agreement and that it was not implied by the conduct of the parties that the husband was to have an interest in their earnings.

Counsel for appellant says this brings the case within the rule laid down by this court in *Gorrell* v. *Gorrell, 97 N. J. Eq. 367.*

We there held that the wife's story was as credible as the husband's and that the husband had not sustained the burden of proving that the realty purchased by the wife in her own name was purchased with the husband's earnings, turned over to her, and that, therefore, the husband could not succeed because "the presumption is that the money he turned over to her was by way of gift to her and to establish a resulting trust in his favor in the money, or in any real and personal property purchased therewith in her name, his proof to rebut such presumption must be certain, definite and reliable, and leave no reasonable doubt in the court's mind that he did not intend to make a gift to her."

The *Gorrell Case* was to establish a resulting trust and the money was given by the husband to the wife without reservation or condition.

The instant case, to the extent that it lends itself to relief, is not one of resulting trust in real estate arising from a joint hoard as in *Beck* v. *Beck, 78 N. J. Eq. 544,* nor as in *McGee* v. *McGee, 81 N. J. Eq. 190,* where the husband's funds were invested by them in land in her name; but is for an accounting of moneys in the hands of the wife belonging to the husband.

While the wife claimed that at the time of her marriage she had about $3,400, the husband said that she had only $1,200. It is undisputed that any moneys that she possessed at the time of her marriage had been lost in business ventures in 1912 to 1913. Respondent's testimony, which was in many respects corroborated, was that between 1912 and 1922 there were no investments made either by husband or wife, but during that period, respondent was steadily employed, earning from 1916 to 1922 wages from $70 to $90 per week, which he

turned over to his wife to take care of for him against their old age. This she denied and said that the property was bought with her money which she earned.

A wife's savings, out of her husband's earnings, must be accounted for unless she can prove a gift or establish a settlement. *Marker* v. *Marker, 103 N. J. Eq. 538.*

A case for an accounting of moneys in the hands of the wife, belonging to the husband, may be successfully resisted by the wife by showing a gift, the burden of which is on her. *Farrow* v. *Farrow, 72 N. J. Eq. 421.*

The appellant wife here makes no claim nor offered proof of an express gift.

A presumption of a gift by way of settlement arising from possession of the funds with the husband's consent might have defeated the husband in the instant case, had not the agreement, which the vice-chancellor found to be established between him and his wife, rebutted the presumption.

We think the finding of the vice-chancellor on this phase of the case was amply supported by the evidence.

Appellant's third point is that the master should have allowed appellant $1,300 credit on accounting. She claimed that this sum was withheld from the purchase price received from the sale of the property because there was an encumbrance against the property in that amount at the time it was sold by her. There was no satisfactory proof tending to show that she was entitled to this credit. The settlement sheet did not indicate such payment. We conclude that under the circumstances the court below was correct in disallowing this item.

The fourth and last point raised by appellant is that respondent had another wife living and undivorced from him at the time he married appellant.

Appellant very properly observes that the legality of respondent's marriage to appellant is the outstanding issue. It is, as appellant says, "the crux of the case, because if the parties were not legally husband and wife, the appellant's defense of the statute of limitations would have to prevail, it

being admitted by respondent on the face of his bill that his action was instituted more than seven years after it accrued."

For the purpose of proving a prior marriage between respondent and a third person known as Philomena, appellant attempted to offer in evidence a paper purporting to be a copy of a certificate from the Swiss consulate, of the registry of this marriage in Switzerland in 1908. This certificate, however, was not properly authenticated. The official record, if there was one, was in Switzerland and there was no testimony to show that the paper was a copy of the original.

The master refused to admit the paper in evidence and appellant says this was error. We think not.

The other witnesses called by appellant failed to prove either a ceremonial or common law marriage between respondent and Philomena.

The respondent was called as a witness by appellant and positively denied a marriage to Philomena.

Proof of ceremonial marriage between respondent and appellant (undisputed in this case) and living together for more than twelve years, raises the presumption of the legality of marriage which can only be overcome by clear and conclusive evidence of the validity of a subsisting first marriage. *Schaffer* v. *Kreslovnikow, 88 N. J. Eq. 192.* Furthermore, Vice-Chancellor Leaming, in *Sparks* v. *Ross, 79 N. J. Eq. 99,* affirmed by this court in *Ibid 649,* said, "that a presumption of divorce from a prior marriage arises from a subsequent marriage."

The finding of fact by the master in the instant case that appellant was the only living wife of respondent at the time the bill was filed was fully justified by the proofs.

In this connection appellant alleges that the determination of the issue of the validity of the marriage was improperly referred to the master by the vice-chancellor. This cause was referred to the vice-chancellor in the usual form. We find no authority for making a reference of a case of this kind to a master. In *Morris* v. *Taylor, 23 N. J. Eq. 131,* it was held that when a reference is made to a vice-chancellor, he must determine all the issues that are raised by the pleadings.

However, we do not think the decree should be reversed for this reason. The appellant acquiesced in this action. She made no objection to the court below. She introduced all the evidence on the issue of marriage and upon an adverse report, filed exceptions and when the vice-chancellor, passing upon the facts, sustained the findings of the master, the appelland for the first time complained of the irregularity.

We think she has waived any right to raise the point in this court.

We are of the opinion that the decree of the court of chancery should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—DILL, J. 1.