This is a suit between husband and wife over bank accounts standing in the name of the wife, both savings and checking accounts.
From the time the parties were married in 1896 until this controversy became acute last winter, complainant turned over to his wife every pay day his entire salary. In recent years he became entitled to benefits on disability policies, and these, too, he gave to his wife. From time to time Mrs. Meyer took a boarder or two into the home, and in other minor *Page 482 
ways she added to the earnings of her husband. The parties have two children, one a girl who, until her marriage, followed her father's example and handed over all her pay to her mother. The son, now about twenty-six years old, unmarried, living with his parents, pays his mother $45 a month.
At the time of the marriage of the parties, Mrs. Meyer had about $100. Some thirty-five years ago, she inherited a small sum and with it bought a little business which she ran for a few months and then sold for $600 or $800. That seems to have been the only separate business in which she was ever engaged.
About twenty-five years ago, complainant received $5,000 from his mother's estate. With it he bought a house for $6,500, giving a purchase-money mortgage for the difference. After four years, the Meyers sold the property and bought another. More sales and purchases followed. Title in each case has been taken by the parties as tenants by the entirety. From these real estate transactions, several thousand dollars have been acquired in addition to the parties' home.
The money from all these sources was kept by the wife and banked in her name with the consent of complainant. Out of these moneys, as a single fund, she has paid all the expenses of the family, personal, household, interest and principal of mortgages — everything. And all the bank accounts in controversy derive from these sources.
Complainant says that it was understood and agreed between himself and his wife that all these moneys were to be used for their joint benefit, first for the current support of the family, and the surplus for their old age; and he prays that she be directed to account and to pay him one-half of the accumulations. The defendant denies any such agreement and asserts that the money is hers alone.
Neither of the children lays claim to any part of the fund. The payments made by the son have not exceeded reasonable board. The money turned over to defendant by the daughter, after she attained her majority, was probably more than a fair charge for board, clothing, c. The excess, I will assume, was a gift to defendant. *Page 483 
Complainant's contributions to the fund were much greater than the receipts from all other sources, so if he is allowed half of what has been saved, he gets less than his share as measured by what he put in. The question is whether his contributions were all gifts to his wife. The direct proof of agreement that the fund should belong to the parties equally is weak, and unless the conduct of the parties itself indicates a like intention, complainant cannot prevail.
A bank account is a debt owing by the bank to the depositor, a chose in action prima facie owned by the depositor. Anyone claiming an interest adverse to the depositor has the burden of proof. When the claimant, by showing the origin of the moneys in account, forces the depositor to assert that the moneys were given to her, the burden shifts. A valid gift requires not only that donor deliver the subject-matter and divest himself of dominion, but also that he have a donative intent. All these elements must be proved in order to establish the gift. Farrow
v. Farrow, 72 N.J. Eq. 421. The intent is, however, often presumed when the wife clearly has legal title. The most common example is presented when a husband pays for land and has legal title put in his wife or in himself and wife. Here the presumption of a gift is very strong and can be overcome only by "certain, definite, reliable and convincing proof." Reeves v.Weber, 111 N.J. Eq. 454. When a husband buys corporate stocks or bonds and has the certificates or registration run to his wife, there is a like presumption, but probably not quite so strong, since our law guards title to land with special care. And if a husband, who generally keeps his money in his own bank account, occasionally turns over sums to his wife intending that she deposit it to her credit, doubtless a gift would be presumed — though circumstances may lead to a different conclusion.Monoghan v. Collins, 71 Atl. Rep. 617. But I cannot draw a presumption of gift when the husband habitually turns over all his money to his wife. "A wife's savings out of her husband's earnings must be accounted for unless she can prove a gift or establish a settlement." Schuler v. Schuler, 114 N.J. Eq. 220. *Page 484 
Let us consider the position of the parties at a time when they had been married more than fifteen years but before complainant had inherited anything from his mother. He had had no estate when he married and he still had nothing — if defendant's position is correct, and if every time he turned his pay over to her the money became hers and hers alone. Not only the money saved but all the furnishings in their home were hers, bought with her money. The food on the table was hers and he ate by her grace. And each week when he gave her his pay check, he beggared himself anew.
Defendant's counsel, sensible that no court would reach such a conclusion, suggests that only the surplus remaining after the payment of current expenses was intended as a gift. Under this theory the husband's position is a little improved, since he can eat at home as of right, and is even conceded an interest in the furniture. But he has no share in the modest savings, the estate which is the result of his labor. There is, however, no evidence whatever of an agreement to that effect. If I find that such was the intent, the finding must rest solely on an inference from the slender circumstance that the surplus, like the current funds, remained in the wife's bank account.
At common law, a gift by a husband to his wife was ordinarily void, though in equity the gift was upheld if deemed a reasonable provision for her. But a husband's deed of all his property to his wife was inoperative in equity as in law, for it went beyond a reasonable provision. 2 Story Eq. Jur. § 1374, quoted inFretz v. Roth, 70 N.J. Eq. 764. I do not know whether a husband's gift of all his property to his wife, fully proved and imposition and mistake absent, would nowadays be held void; but the policy which underlies the rule stated in Story has still sufficient vitality to require the wife definitely to prove donative intent. Banking the money in her account is not enough.
After complainant had received the legacy from his mother and had invested it in land taken in the names of his wife and himself, he had an estate regardless of his interest in the funds in controversy. So the considerations just stated do *Page 485 
not apply thereafter. But the parties made no change in their method of handling their funds, and there is nothing to indicate that they wanted a different result to flow from the wife's continued custody of the family exchequer.
Vice-Chancellor Garrison in Fretz v. Roth, 68 N.J. Eq. 516,
and Beck v. Beck, 77 N.J. Eq. 51, dealt with situations like the one before me and developed the idea of a common hoard, and in each case the court of errors and appeals reversed. 70 N.J. Eq. 764
and 78 N.J. Eq. 544. But the immediate problem in each case was real estate standing in the wife's name. Neither case, in the appellate court, turned on a decision as to ownership of the money earned by the husband and handled and saved by his wife. The Fretz opinion was entirely silent on the subject. In the Beck Case, Mr. Justice Swayze wrote:
"The vice-chancellor based his inference that the savings were the property of both complainant and defendant — a `common hoard' — upon the station in life of the parties, and without evidence to that effect he took judicial notice apparently, that it is the usual customary habit of such people to constitute the wife the treasurer and to turn all moneys from every source over to her. He limited this custom apparently, to what he called `low wage earners,' but did not define this term. What might appear high wages to one would appear low wages to a man more fortunately circumstanced. The test is too uncertain, and introduces one rule for one class of people and a different rule for a class with larger income without drawing the dividing line. The circumstances of the parties may often be of great value as evidence of their intention, where their intentions are material to the issue, but the vice-chancellor did not treat his assumption of the customary habit of low wage earners as evidence, but rather as a rule of law."
In Reeves v. Weber, supra, Vice-Chancellor Leaming (whose opinion in this respect was adopted by the court of errors and appeals), referring to the two cases above cited, said, "It cannot now be said to be a rule of law that the savings of a wife, from the weekly wages turned over to her by *Page 486 
her husband and applied by her to discharge household expenses, are to be necessarily regarded as the property of both and that the survivor takes. The rule there defined appears to be that the circumstances and conduct of the parties, as in all other cases, are to be treated as no more than evidential of intention, when their intentions are material to the issue."
The custom of constituting the wife the family treasurer, while probably more common in low income families, is by no means confined to them. It springs from the confidence reposed by the husband in his wife, and from the fact that she does most of the family buying while he is busy earning the money. There are three possible inferences from such a course of conduct: One, a gift to the wife of all the money or of so much as is saved — resting on a supposed intention which would surprise most wives equally with their husbands. Second, all the money remains the husband's — here again I think the parties would be surprised. Third, that the fund belongs to them in common or jointly. This solution comports with the idea that marriage is an equal partnership, that husband and wife are one person. I believe this to be the correct inference in the absence of circumstances showing a contrary intent and regardless of the size of the husband's income. It was adopted by Vice-Chancellor Backes in Marker v.Marker, 103 N.J. Eq. 538, on proof — apparently slight — of a "fifty-fifty" agreement.
I find the husband is entitled to half the fund.
It would be unfair, however, to ask defendant to draw an account covering a period of more than forty years. Reeves v.Weber, supra. Let defendant disclose what sum she had on hand ten years ago, before controversy started; credit her with the amount she had received from their daughter (less reasonable board, clothing, spending money, c.); charge her in favor of complainant with half the balance, and let her account from that time on. Remember that the purpose of the account is only to ascertain the actual savings. The parties with their counsel, informally going over the check and pass books, should be able to agree upon the figures without the expense of a reference to a master. *Page 487