Two issues are presented for determination. The complainant seeks to recapture six parcels of land conveyed by him to his wife May 6th, 1941, upon the contention that they were conveyed to her to be held in trust for him. The defendant wife denies the creation of a trust and invokes the presumption of a gift. She also contends that even if the complainant did not intend to make her a gift when he executed the original conveyance he subsequently and definitely made a settlement of the six properties upon her. By way of counter-claim she asks that the complainant be decreed *Page 289 
to pay her $1,322.18, with lawful interest from December 31st, 1938, money she advanced to him to meet a payroll and for which she holds his original and renewal promissory notes. The complainant admits receipt of this money and the giving of the notes; he contends that the notes were without consideration as the money was his money, saved by his wife out of her weekly allowance.
There is no substantial dispute as to the circumstances surrounding the conveyance. The complainant alleges, and the defendant concedes, that the lands conveyed were owned by the complainant; that they had been mortgaged for $13,000 to his bank to secure repayment of a loan made him to finance his business; that the transfer of title was suggested by the bank officials in order to establish a separate credit for Mrs. Moses, qualifying her to assume payment of her husband's note then reduced to $12,000, and freeing him to borrow additional moneys. Coincident with the conveyance by complainant to the defendant, the defendant conveyed a property she owned to him so that he might list it in his financial statement.
Complainant is a contractor, specializing in the erection of large buildings and in heavy construction work. Prior to January, 1933, his bank, First National Bank and Trust Company of Beverly, was permitted to lend $20,000 to one individual; as a result of legislation or banking department regulations, the amount which the bank might lend to one person was then reduced to $14,400. In December, 1940, the complainant was awarded a federal contract for construction work at Fort Dix to cost $81,610. This contract was later increased to more than $100,000, and in April, 1941, complainant obtained another contract for work at Fort Dix to cost $136,000. It was stipulated, when these awards were made, that complainant should begin work immediately and prosecute it vigorously. Complainant applied to his bank for financial assistance. He was advised of the lowered limit upon individual loans, and the cross conveyances were recommended.
The complainant and the defendant are now estranged but, at that time, they were living happily together. Defendant *Page 290 
admits that the complainant discussed his business situation with her and that she agreed to execute the instruments necessary to effectuate the arrangement proposed by the bank officials. May 6th, 1941, complainant signed the deed in question and it was immediately recorded. At the same time the defendant executed a deed to the complainant for the parcel of land she owned and assumed responsibility for the $12,000 loan. The bank canceled complainant's $12,000 note and made him a new loan.
Two of the parcels of land conveyed to the defendant were unimproved; four were improved and occupied by tenants. Notwithstanding the conveyance, the complainant continued in possession and control of all the properties, collected the rents, paid the taxes, water rents, insurance charges, and made necessary repairs. The complainant also continued to make principal and interest payments on the $12,000 obligation until it was satisfied February 5th, 1943. The bank then assigned the $13,000 mortgage covering the six properties to the complainant.
It was the testimony of the complainant that, when the note assumed by his wife had been liquidated, he asked her to reconvey the six properties to him and offered to reconvey her property to her, and that she refused. The defendant testified that Mr. Moses made no request for a reconveyance until more than two years later, and after they had become estranged and this suit was about to be instituted. However, the defendant did frankly admit that, at the time the conveyance was made to her, there was no thought of a gift.
A long established rule in this court is that when a husband transfers real property to his wife it will be presumed that he intended a gift or voluntary settlement. Such presumption may, however, be rebutted by proof certain, definite, reliable and convincing — proof leaving no reasonable doubt of the intention of the parties. McGee v. McGee (Court of Errors andAppeals), 81 N.J. Eq. 190; 86 Atl. Rep. 406; Rosecrans v.Rosecrans, 99 N.J. Eq. 176; 132 Atl. Rep. 100; affirmed,109 N.J. Eq. 137; 156 Atl. Rep. 429.
"If from all the evidence it is clear that the presumption of settlement is rebutted, a trust will then result which can *Page 291 
be enforced. This well-settled doctrine is illustrated in many cases in our courts. Peer v. Peer, 3 Stock, 432; Persons v.Persons, 10 C.E. Gr. 250; Lister v. Lister, 8 Stew, Eq. 49;S.C., 10 Stew. Eq. 331; Read v. Huff, 13 Stew. Eq. 229."Duvale v. Duvale (Court of Errors and Appeals), 56 N.J. Eq. 375
(at p. 382): 39 Atl. Rep. 687. If the transaction between Mr. and Mrs. Moses with respect to the six parcels of land had been concluded with the satisfaction of the $12,000 note obligation, a trust in favor of Mr. Moses in the six properties would have resulted. The transaction was not, however, so concluded and we must examine the evidence to ascertain the subsequent intent of the parties with respect to these six properties.
An alleged subsequent voluntary gift or settlement of the six properties upon Mrs. Moses is said to have been made April 16th, 1943. Between January and that day unfortunate differences had arisen between the complainant and the defendant as to the conduct and control of their daughter. Complainant asserts that when his daughter was only fifteen years of age she began to "keep steady company" with a man considerably older than herself. Complainant talked with his wife about the situation and asked her to help him guard their daughter and destroy or postpone the developing romance. The defendant refused to interfere. Finally complainant declared that he would not continue to live in the house where the man, to whom he objected, was being constantly entertained by his wife and daughter, and he moved to a room in his office building. Complainant later returned to his home but, from that time until the present, he and his wife have continued to be estranged.
April 16th, 1943, complainant forced a crisis in his relations with his wife. When, on that day, Mrs. Moses called at his office for her weekly allowance of $150 she was told that there would be no more checks for her. She went to her husband's private office and asked him to explain his action. Before her advent he had taken from his file folders containing old deeds, receipts and papers respecting the six properties he had conveyed to her and placed them upon a chair. Complainant testified he told his wife that in view of her *Page 292 
refusal to reconvey his real estate to him she could assume responsibility for the collection of the rents and the payment of the bills and he would go to court to force her to reconvey the properties to him. Mrs. Moses testified that the complainant said to her only that her deeds were on the chair, indicating the folders, and that she and her daughter could thereafter live on the income from the properties. She declared that he did not suggest a reconveyance.
Where a conveyance is made to a person whom the grantor is under a legal obligation to maintain, such as a wife or child, the "good consideration of blood or love and affection will support the conveyance, and no resulting trust will arise from the payment of the consideration. In such cases the presumption is that a settlement or advancement was intended." Strong v.Strong (Court of Errors and Appeals), 136 N.J. Eq. 103;40 Atl. Rep. 2d 548. The requisites of a valid gift intervivos, as declared by our Court of Errors and Appeals inBanker's Trust Co. v. Bank of Rockville Centre, c., 114 N.J. Eq. 391; 168 Atl. Rep. 733; reversing 110 N.J. Eq. 203;159 Atl. Rep. 505, are: "first, a donative intent on the part of the donor; second, an actual delivery of the subject-matter of the gift unless it be a chose in action, like a certificate of shares of stock or evidence of indebtedness, in which case the delivery must be of that variety of which it is most capable, and third, the donor must strip himself of all ownership and dominion over the subject-matter of the gift." Subsequent admissions against interest by the alleged donor are competent to establish a donative intent. Duvale v. Duvale, supra.
Early in June, 1943, the complainant consulted Dr. H.E. Yaskin, a neurologist, with respect to his differences with his wife over the control of their daughter. It was arranged that the complainant and the defendant should together visit the specialist and be interviewed. June 13th, 1943, complainant wrote Dr. Yaskin a lengthy letter. The letter was written in longhand and a carbon copy was preserved. Complainant placed this copy in his safe from whence it was later taken by the defendant. Complainant acknowledged its authenticity, and it is in evidence. In part this letter reads: *Page 293 
"I am not jealous of Mrs. Moses and I don't hate her for it. I think I pity her. It hurts me to see her life our daughter's life and my life ruined for no good solid reason but just kid stuff. She owns at least $30,000 worth of property which I had put in her name as well as a $1,400 automobile and I am leaving almost $5,000 worth of furniture in the home for her. She will collect $205 per month rent besides the home she will live in. Of course from that she will have to pay the taxes and upkeep on the properties. I don't intend to give her or Helen any other money. * * * After you are through with us if no good comes from it I am going to give up my business and leave for some unknown place, it will be hard to give up a business which I have been 20 years building up and sell for less than the value almost $100,000 worth of equipment. However, what's the difference, my money would never make me happy again." The significance of this admission by the complainant, two months after the alleged gift and settlement, cannot be minimized. It is convincing that complainant intended and effectuated a settlement of the six properties upon his wife. He had conveyed title to the lands to her; on April 16th, 1943, he delivered to her that which he held as evidence of ownership, the title papers and receipts, and gave her possession of and dominion over the properties. Notwithstanding his testimony that he told his wife on April 16th, 1943, that he would bring suit to force her to reconvey the six properties to him, this cause was not instituted until October 16th, 1945.
Complainant testified that subsequent to April 16th, 1943, he re-roofed one of the properties conveyed to his wife. The evidence makes it clear that this was done of his own volition. The improvement goes with the title. Selover v. Selover
(Court of Errors and Appeals), 62 N.J. Eq. 761;48 Atl. Rep. 522; Strong v. Strong, supra.
Defendant, by her counter-claim, alleged that on December 31st, 1938, she loaned to the complainant $1,322.18, for which he gave her his promissory note payable one year after date with lawful interest, and that on December 31st, 1940, complainant renewed that note for one year; that she still owns the note and that no principal or interest has been paid *Page 294 
thereon. She asked that this court decree payment to her, by her husband, of the principal and interest due.
Complainant admits the execution and delivery of the notes to his wife. In his answer to her counter-claim, and upon the witness stand, he claimed, however, that the moneys given to him by his wife were his, saved by her out of her weekly allowance. The defendant testified, and it was not denied, that $200 of the money loaned to her husband came to her upon maturity of some old building and loan stock which she had held, and that $200 came to her from her mother. Thus, she has satisfactorily established ownership to $400. She admits that the balance, $922.18, deposited in her private account, did in fact represent savings from out of the weekly allowance given to her by her husband.
"A wife's savings, out of her husband's earnings, must be accounted for unless she can prove a gift or establish a settlement." "A case for an accounting of moneys in the hands of the wife, belonging to the husband, may be successfully resisted by the wife by showing a gift, the burden of which is on her."Schuler v. Schuler (Court of Errors and Appeals), 114 N.J. Eq. 220,225; 168 Atl. Rep. 468. In the instant case, defendant has offered no proof of an express gift of moneys. The evidence, however, is convincing that complainant did, in fact, intend a gift to his wife of any savings from her allowance.
Complainant's conduct speaks louder than his words. Not only did he give her his promissory note when she made this loan to him to meet his payroll but the transaction was recorded and carried in his business ledger as a loan secured by note. The notes specifically provide for the payment of interest at six per cent per annum. Furthermore, with his notes outstanding, he opened, on January 20th, 1943, a bank account in his name and that of his wife and deposited therein $1,075. At the same time he instructed his bookkeeper to give his wife a check each week for $150. Mrs. Moses habitually held one-half of this money for the operation of the home; the other half she usually deposited in the joint account. She drew and cashed checks at will, while, so far as the evidence discloses, complainant never drew a check *Page 295 
on the account. When the complainant turned over the title papers to his wife and told her that she must support herself and daughter out of the income from the properties, she asked him as to the disposition of the money in the joint account. She testified, and she was corroborated by his bookkeeper, that he answered saying that she could do as she pleased with respect to that money. She went directly to the bank and withdrew $1,824.86, all the money then on deposit in the joint account. She immediately opened two new accounts at the bank, one in her own name and one in her name and that of her daughter. In her individual account she deposited $824.86, and the balance of $1,000 she deposited in the account opened in her name and that of her daughter. The complainant did not in his bill and does not now ask that his wife account to him for these moneys or seek to recover any part thereof. These are but examples of complainant's generosity to his wife both before and after their estrangement. He gave her an automobile and made no complaint when she converted it into cash; he gave her government bonds and made no complaint when she cashed them for $3,000; in the midst of their disputes over their daughter, he took defendant on a trip to Maine and another trip to Florida. The attitude of the complainant toward his wife, and his actions before and after the challenged transactions, clearly indicate that he would and did make the settlement of real estate upon her and would and did intend that she should retain and possess any moneys saved from the liberal allowance he made her.
For the reasons given, I shall advise a decree dismissing complainant's bill and directing him to pay to his wife, the defendant, $1,322.18 with lawful interest from December 31st, 1938. *Page 296